# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF TEXAS
# MARSHALL DIVISION

| | | |
|---|---|---|
| APICORE US LLC, MYLAN INSTITUTIONAL LLC, | § § § § § | |
| *Plaintiffs*, | § § | |
| v. | § § | CIVIL ACTION NO. 2:19-CV-00077-JRG |
| BELOTECA, INC., | § § § | |
| *Defendant*. | § | |

## MEMORANDUM AND OPINION ORDER

Before the Court is Defendant Beloteca, Inc's ("Beloteca") Motion to Dismiss for Lack of Personal Jurisdiction, Improper Venue, and Prior Pending Action (the "Motion"). (Dkt. No. 21.) Having considered the Motion and the relevant authorities, the Court is of the opinion that the Motion should be **DENIED-IN-PART** and **GRANTED-IN-PART** to the extent set forth herein.

## I. BACKGROUND

Plaintiff Apicore US LLC ("Apicore") owns U.S. Patent Nos. 8,969,616 (the "'616 Patent") and 9,353,050 (the "'050 Patent") (collectively, the "Asserted Patents"). (Dkt. No. 1 ¶ 28.) The claims of the Asserted Patents cover a highly pure isosulfan blue ("ISB") active pharmaceutical ingredient ("API") and methods for making the same. (*See* Dkt. No. 1-1 at Abstract (the '616 Patent); Dkt. No. 1-2 at Abstract (the '050 Patent).) On March 4, 2019, Apicore and Co-plaintiff Mylan Institutional LLC ("Mylan") (collectively, "Plaintiffs") filed a Declaratory Judgment Action Of Infringement based on the Asserted Patents against Beloteca for its intended "manufacture, use, offer to sell, sale, and/or import into the United States an [ISB] injection

product" (the "Accused ISB Product") corresponding to Abbreviated New Drug Application ("ANDA") No. 210714. (Dkt. No. 1 ¶¶ 1–2.)[1,2]

Beloteca submitted ANDA No. 210714 to the Food and Drug Administration ("FDA") on July 26, 2017, and the FDA approved ANDA No. 210714 on January 16, 2019. (Dkt. No. 37-3; *Beloteca, Inc. v. Apicore US LLC*, No. 1:19-cv-00360 (N.D. Ill. Jul. 26, 2017) (the "Illinois Action"), Dkt. No. 1 ¶ 27.) One day later, Beloteca filed a declaratory judgment action of non-infringement and invalidity in the Northern District of Illinois directed to the '616 Patent, the '050 Patent, and U.S. Patent No. 7,662,992 (the "'992 Patent").[3] (Illinois Action, Dkt. No. 1 ¶ 1.)

Apicore is a Delaware limited liability company with a place of business at 49 Napoleon Court, Somerset, New Jersey 08873. (Dkt. No. 1 ¶ 6.) Mylan is a Delaware limited liability company with a place of business at 1718 Northrock Court, Rockford, Illinois 61103. (Dkt. No. 1 ¶ 9.) Mylan is the exclusive licensee of the Asserted Patents for incorporating Apicore's API into an ISB product. (*Id.* ¶ 29; *see also* Dkt. No. 5 at 3.) Mylan also filed and obtained an ANDA with the FDA based on the Asserted Patents. *See Mylan Institutional LLC v. Aurobindo Pharma Ltd.*, 857 F.3d 858, 863 (Fed. Cir. 2017). Although Mylan's ISB API is designated by the FDA as the

---

[1] Plaintiffs previously enforced the Asserted Patents against Aurobindo Pharma Ltd. (Aurobindo) for its entry into the ISB market, and Plaintiffs successfully obtained a preliminary injunction. *See Mylan Institutional LLC v. Aurobindo Pharma Ltd.*, No. 2:16-cv-00491-RWS-RSP, Dkt. No. 101 at 16–20, 26–47 (E.D. Tex. Nov. 21, 2016), *aff'd*, *Mylan Institutional LLC v. Aurobindo Pharma Ltd.*, 857 F.3d 858, 873 (Fed. Cir. 2017).

[2] Plaintiffs contemporaneously filed a Motion for Temporary Restraining Order (the "TRO Motion") asking this Court to issue a "temporary restraining order prohibiting Beloteca from engaging in the commercial manufacture, use, offer to sell, or sale within the United States of, or importing into the United States their ISB product, while the parties undergo expedited discovery and the Court resolves a motion for preliminary injunction." (Dkt. No. 5 at 24.) Since Beloteca agreed to not launch the Accused ISB Product until June 5, 2019, (Dkt. No. 19), the Court advised the parties that the TRO Motion would be treated as a request for a preliminary injunction. Plaintiffs subsequently filed a Supplemental Motion for Preliminary Injunction (the "Supplemental Motion") (Dkt. No. 38), and Beloteca filed a Response to the TRO Motion and the Supplemental Motion (Dkt. No. 63). In view of the rulings herein, the Court leaves resolution of Plaintiffs' request for injunctive relief to the transferee court.

[3] Apicore also owns the '992 Patent, which also covers a process for making ISB API. (Dkt. No. 5 at 3 n.4.) Although Plaintiffs have not asserted the '992 Patent here, they expressly reserved the right to do so in the future. (*Id.*)

Reference Standard[4] product, the Asserted Patents were not listed in the FDA's Orange Book: Approved Drug Products with Therapeutic Equivalence Evaluations ("Orange Book").[5,6] (*See* Dkt. No. 1 at ¶ 24.)

Beloteca is a California corporation having a place of business at 10525 Vista Sorrento Parkway, Suite 100, San Diego, California 92121. (Illinois Action, Dkt. No. 1 ¶ 3; Dkt. No. 21-1 ¶ 2 (Declaration of Fred Defesche, CEO of Beloteca).) Beloteca is not licensed to do business in Texas, does not have a registered agent in Texas, does not have a Texas Taxpayer Number, is not licensed with the Texas Department of State Health Services, and is not licensed as a distributor of prescription drugs sold in Texas. (Dkt. No. 21-1 ¶¶ 3, 7–9.) To market and sell the Accused ISB Product, Beloteca has entered into a sales, marketing, and distribution agreement (the "TruPharma Agreement") with TruPharma, LLC ("TruPharma"), a Delaware limited liability company with its principal place of business in Florida. (Dkt. No. 37-6 at Background). Since February 3, 2016, TruPharma has been licensed to sell pharmaceutical drugs in Texas. (Dkt. No. 58-5 (Texas HHS website showing license).) Under the TruPharma Agreement, "TruPharma will sell, market and distribute [Beloteca's generic pharmaceutical products] on an exclusive basis in the Territory [i.e., United States]." (*See* Dkt. No. 37-6 at Background, § 1(y).) The TruPharma Agreement, which does not exclude Texas from the scope of the agreement, also requires TruPharma to "use all commercially reasonable efforts to market and distribute the Product(s) in the Territory" and to "use commercially reasonable efforts to maximize Net Profit." (*Id.* § 3(a).)

---

[4] A "[r]eference standard is the drug product selected by FDA that an applicant seeking approval of an ANDA must use in conducting an in vivo bioequivalence study required for approval." 21 CFR § 314.3.
[5] This is because Mylan was not a New Drug Application ("NDA") filer and thus was not required to submit the Asserted Patents to the FDA for inclusion in the Orange Book. *Cf.* 21 C.F.R. § 314.53 ("Who must submit patent information. This section applies to any applicant who submits to FDA an NDA or an amendment to it . . . ."). The ISB product previously sold by the NDA filer (Covidien, Ltd.) is no longer commercially available. (Dkt. No. 1 ¶ 24.)
[6] Since the Asserted Patents were not listed in the Orange Book, Beloteca was not required to—and did not—submit a paragraph IV certification along with ANDA No. 210714. (Dkt. No. 37 at 22.)

In the instant Motion, Beloteca seeks dismissal of the above-styled case under Federal Rule of Civil Procedure 12(b)(2) and (3) for lack of personal matter jurisdiction, in favor of the forum corresponding to the first-filed action, and for improper venue. (Dkt. No. 21 at 2.) As an alternative to dismissal, Beloteca requests transfer pursuant to 28 U.S.C. § 1406 to either (1) the Northern District of Illinois or (2) the Southern District of California. (*Id.* at 16.) Likewise, Plaintiffs request that "[i]f this Court is inclined to grant Beloteca's [M]otion, . . . the Court should transfer this action in the interests of justice[] [because] [a]ll the preliminary injunction briefing has been before this Court and the parties have already entered into a cross-use agreement for any discovery produced in this action or the Illinois action." (Dkt. No. 37 at 11 n.8.) This notwithstanding, on April 8, 2019, the Northern District of Illinois dismissed the first-filed case before it due to a lack of case or controversy under Art. III. (*See* Illinois Action, Dkt. No. 43 at 1, 11–12 (Apr. 8, 2019).)

## II.     DISCUSSION

### A.     This Court has Personal Jurisdiction over Beloteca

Federal Circuit law governs personal jurisdiction where "a patent question exists." *See Celgard, LLC v. SK Innovation Co.*, 792 F.3d 1373, 1377 (Fed. Cir. 2015). "[W]hether a defendant is subject to specific personal jurisdiction in the forum state involves two inquiries: first, whether the forum state's long-arm statute permits service of process and, second, whether the assertion of jurisdiction is consistent with due process." *Id.* "Because the Texas long-arm statute extends to the limits of federal due process, the two-step inquiry collapses into one federal due process analysis." *Johnston v. Multidata Sys. Int'l Corp.*, 523 F.3d 602, 609 (5th Cir. 2008); *accord Grober v. Mako Prod., Inc.*, 686 F.3d 1335, 1345 (Fed. Cir. 2012) ("California and federal due process limitations are coextensive, and thus the inquiry collapses into whether jurisdiction

4

comports with due process.") (internal quotation marks omitted).

For due process to be satisfied, the defendant must have "certain minimum contacts with [the forum] such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945) (internal quotations omitted). Upon a showing of purposeful minimum contacts, the defendant bears the burden to prove unreasonableness. *Elecs. for Imaging, Inc. v. Coyle*, 340 F.3d 1344, 1350 (Fed. Cir. 2003). In rare circumstances, a defendant may defeat the exercise of personal jurisdiction by "present[ing] a compelling case that the presence of some other considerations would render jurisdiction unreasonable." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 477 (1985).

Beloteca argues that "[t]he act of merely filing an ANDA, standing alone, is insufficient as a matter of law to establish personal jurisdiction." (Dkt. No. 21 at 17.) Beloteca also argues that Mylan's reliance on *Acorda Therapeutics Inc. v. Mylan Pharm. Inc.*, 817 F.3d 755 (Fed. Cir. 2016), is misplaced and cannot be reconciled with *Zeneca Ltd. v. Mylan Pharm., Inc.*, 173 F.3d 829 (Fed. Cir. 1999), where filing an ANDA did not subject the applicant to personal jurisdiction even in the district where the ANDA was filed and even when the ANDA included a paragraph IV certification. (Dkt. No. 52 at 9.) Beloteca contends that neither *Acorda* nor its progeny found personal jurisdiction based solely on the act of submitting an ANDA. (*Id.* at 9.) Rather, those cases involved large, established defendants with already-existing distribution networks in the forums-at-issue with specific and particular contacts unique to those forums, in addition to filing an ANDA. (*Id.*) Beloteca argues, however, that it is a small startup company that "did not yet have any marketing or distribution channels set up and did not yet have any contacts with this

forum into which it is being haled into court."[7] (*Id.* at 10.) Additionally, Beloteca argues that the act of filing an ANDA without any patent certifications (as it did in this case) does ***not*** constitute an act of infringement under 35 U.S.C. § 271(e) and thus "[t]his is not a Hatch-Waxman case." (*Id.* at 3, 20.)

Plaintiffs argue that this Court and its sister courts have found, in view of *Acorda*, sufficient minimum contacts to support specific personal jurisdiction where a defendant's "ANDA [seeks] to market [its drug] nationwide, including in Texas and within this district as [Plaintiff's] Complaint plausibly allege[d]." (Dkt. No. 37 at 14–15 (quoting *Warner-Chilcott v. Mylan Pharms., Inc.*, 2:15-CV-01740-JRG-RSP, 2017 WL 603309, at *2 (E.D. Tex. Jan. 19, 2017) (Payne, J.); citing *Allergan, Inc. v. Teva Pharm. USA, Inc.*, No. 2:15-CV-1455-WCB, 2016 WL 1572193, at *3 (E.D. Tex. Apr. 19, 2016) (Bryson, J., sitting by designation) ("The Federal Circuit explained [in *Acorda*] that by filing an ANDA a drug company 'confirm[s] its plan to commit real-world acts that would make it liable for infringement if it commits them without the patentees' permission." (citation omitted))).) Since (1) Beloteca has already received FDA approval for ANDA No. 201714 and (2) the Complaint in this case—which repeats facts set forth in Beloteca's complaint in the Illinois Action—plausibly alleges that Beloteca will manufacture, market, distribute, and sell the Accused ISB Product in the United States, Plaintiffs contend that Beloteca has sufficient contacts with this District for this Court to exercise personal jurisdiction. (*Id.* at 16–17 (citing Dkt. No. 1 ¶¶ 3, 18, 19).) Plaintiffs also argue that the TruPharma Agreement does not include a carve-out for Texas and thus confirms Beloteca's intent, through TruPharma, to sell, market, and distribute the Accused ISB Product throughout the United States, including in Texas

---

[7] Beloteca's confusing use of past tense as to its marketing or distribution channels raises doubt as to the extent of its marketing and distribution network, especially since the TruPharma Agreement was executed on November 18, 2015—at least three years prior to the filing of Plaintiffs' Complaint. (*See* Dkt. No. 37-6 at 1–2.)

6

and this District. (*Id.* at 19–20.)

The Court finds that Beloteca has sufficient contacts with this forum for the Court to exercise personal jurisdiction over Beloteca. Beloteca's ANDA filing and approval—in combination with its intent to market, distribute, and sell the Accused ISB Product through TruPharma's established distribution network, which includes Texas—constitute sufficient minimum contacts with Texas. Beloteca's arguments boil down to two objections: (1) Plaintiffs do not have a cognizable act of infringement under § 271(e) because ANDA No. 201714 did not include a paragraph IV certification; and (2) under *Zeneca*, the filing of ANDA No. 201714 was not sufficient contact with Texas to support personal jurisdiction, and *Acorda* is distinguishable. Beloteca is wrong on both points.

First, whether Plaintiffs have a cognizable claim under § 271(e) due to ANDA No. 201714's lack of a paragraph IV certification has little bearing on this Court's personal jurisdiction over Beloteca.[8] Several district courts have in fact held that a paragraph IV certification is not required to sustain a § 271(e)(2) claim. *See Takeda Pharm. Co. v. TWi Pharm., Inc.*, No. C-11-01609 JCS, 2013 WL 12164680, at *21 (N.D. Cal. May 20, 2013) ("[T]his Court joins a number of other district courts in concluding that there is no requirement under the Hatch-Waxman Act that a patent must be listed in the Orange Book in order for a drug manufacturer to bring [a § 271(e)(2)] infringement action based on that patent against an ANDA applicant.") (collecting cases). Having considered the plain language of § 271(e)(2) and the reasoning of its sister courts,[9]

---

[8] The district court cases cited by the parties for the inapplicability of § 271(e) involved subject matter jurisdiction challenges. However, since the parties have not raised that issue and because the Court is of the opinion that Plaintiffs have a cognizable claim under § 271(e)(2), the Court need not address subject matter jurisdiction.

[9] District courts are split as to whether a paragraph IV certification is required to sustain a § 271(e) claim. *Compare Eisai Co. v. Mutual Pharm. Co.*, No. 06-3613-HAA, 2007 WL 4556958, at *11 (D.N.J. Dec. 20, 2007) (explaining that "the Federal Circuit specifically conditioned the act of infringement defined by § 271(e)(2) on the filing of a Paragraph IV certification, and not just an ANDA with any type of certification (or no certification)"), *with Cephalon, Inc. v. Sandoz, Inc.*, No. CIV. 11-821-SLR, 2012 WL 682045, at *5 (D. Del. Mar. 1, 2012) ("I respectfully disagree with the sweeping conclusion that the absence of a Paragraph IV certification limits, as a matter of law, the court's

this Court is persuaded that a paragraph IV certification is not required to sustain a § 271(e)(2) infringement claim.

It seems implausible to require a paragraph IV certification to sustain a § 271(e)(2) claim where: (1) a paragraph IV certification is directed to patents—unlike the Asserted Patents—that are listed in the Orange Book, and (2) the first ANDA filer is not required to submit its patents for inclusion in the Orange Book. *See* 21 C.F.R. § 314.53 ("Who must submit patent information [to the Orange Book]. This section applies to any applicant who submits to FDA an NDA or an amendment to it . . . ."); *cf. also* C.F.R. § 314.94(a)(12)(i)(A)(4)(i), (ii) ("[T]he [ANDA] applicant shall provide the patent number and certify, in its opinion and to the best of its knowledge . . . that the patent is invalid, unenforceable, or will not be infringed by the manufacture, use, or sale of the drug product for which the abbreviated application is submitted. The applicant shall entitle such a certification 'Paragraph IV Certification' . . . . The certification must be accompanied by a statement that the applicant will . . . provid[e] [] notice to each owner of the patent or its representative and to the NDA holder.").

Since a second ANDA filer is not required to notify the first ANDA filer that its patent rights may be at risk—as was the situation here—the first and second ANDA filers are not afforded an expedited opportunity to resolve infringement and invalidity disputes prior to the second ANDA filer's market entry. *See* C.F.R. § 314.107(b)(3)(i)(A) ("[I]f . . . the applicant certifies under . . . 314.94(a)(12) that the relevant patent is invalid, unenforceable, or will not be infringed, and the patent owner or its representative or the exclusive patent licensee brings suit for patent

---

subject matter jurisdiction under both 35 U.S.C. § 271(e)(2) and 28 U.S.C. § 2201."), *and Teva Pharm. USA, Inc. v. Abbott Labs.*, 301 F. Supp. 2d 819, 829 (N.D. Ill. 2004) ("The language of § 271(e)(2)(A) does not require that the ANDA contain a certification to constitute an act of infringement."), *and Bayer Healthcare LLC v. Norbrook Labs., Ltd.*, No. 08-C-0953, 2009 WL 6337911, at *9 (E.D. Wis. Sept. 24, 2009) (holding in a case involving an Abbreviated New Animal Drug Application that "a Paragraph IV certification is not required to trigger an infringement action under § 271(e)(2)").

infringement within 45 days of receipt of the notice of certification from the applicant," approval of the ANDA may be delayed.). This seems to be an inadvertent loophole in the Hatch-Waxman statutory framework in which "Congress struck a balance between two competing policy interests: (1) inducing pioneering research and development of new drugs and (2) enabling competitors to bring low-cost, generic copies of those drugs to market." *Andrx Pharm., Inc. v. Biovail Corp.*, 276 F.3d 1368, 1371 (Fed. Cir. 2002); *see also Allergan, Inc. v. Alcon Labs., Inc.*, 324 F.3d 1322, 1337 (Fed. Cir. 2003) ("The patentee, in turn, would profit by enforcing its patent rights before a generic drug manufacturer has moved into the market as a competitor. This balance is what Congress intended when it created the artificial act of infringement under section 271(e)(2)."); *Bristol-Myers Squibb Co. v. Royce Labs., Inc.*, 69 F.3d 1130, 1132 (Fed. Cir. 1995) ("The Hatch–Waxman Act strikes a balance between the interests of a party seeking approval of an ANDA and the owner of a drug patent . . . . [O]nce it is clear that a party seeking approval of an ANDA wants to market a patented drug prior to the expiration of the patent, the patent owner can seek to prevent approval of the ANDA by bringing a patent infringement suit.").

Beloteca's conduct in the Illinois Action—filing an ANDA and challenging the validity and infringement of the Asserted Patents through a declaratory judgment action—mirror the practical results of an ANDA filer's paragraph IV certification—i.e., challenging the validity and/or the infringement of any patents covering the drug in question. Plaintiffs' patent rights should be respected, even if they were not NDA filers. Accordingly, the Court finds that Plaintiffs have a cognizable claim against Beloteca under § 271(e)(2).

Second, the Court finds that Beloteca reads *Zeneca* too narrowly and misses the distinction of *Acorda*. In *Zeneca*, the question was whether personal jurisdiction existed in a Maryland district court where the defendant's ***only*** contact with the forum was filing an ANDA with the FDA located

9

in Maryland. 173 F.3d at 830–31. "Allowing the submission of [an ANDA] to count as the ***sole*** jurisdictional contact for subjecting a generic drug manufacturer to personal jurisdiction results in an unnecessary and unintended punishment for filing a petition with the FDA."[10] *Id.* at 833 (emphasis added). While the mere act of filing an ANDA is insufficient to establish personal jurisdiction, the Federal Circuit has explained that "it suffices for [the forum] to meet the minimum-contacts requirement . . . that [Defendant]'s ANDA filings ***and its distribution channels*** establish that [the Defendant] plans to market its proposed drugs in [the forum] and the lawsuit is about patent constraints on such in-State marketing." *Acorda*, 817 F.3d at 762–63 (emphasis added). There is no conflict between *Zenca* and *Acorda*. The former states that an ANDA filing cannot be the ***sole*** basis for personal jurisdiction; the latter provides the "something more" that triggers personal jurisdiction—i.e., intent and capability to market, distribute, and sell allegedly infringing drugs corresponding to the ANDA filing in the forum. *See id.*

Additionally, Beloteca's attempt to limit *Acorda* to large, established defendants with already-existing distribution networks is not persuasive. The *Acorda* court makes no such factual limitation; it focused instead on the alleged infringer's "future real-world market acts . . . sufficiently connected to the ANDA that trigger[ed] the litigation." *Acorda*, 817 F.3d at 761; *see also id.* at 763 (explaining that because defendant "seeks approval to sell its generic drugs throughout the United States, including in [the forum], and it is undisputed that [the defendant] plans to direct sales of its generic drugs into [the forum] . . . . [s]uch directing of sales into [the forum] is sufficient for minimum contacts").

Here, Beloteca's ANDA No. 210714 has already been approved by the FDA. As to the

---

[10] Indeed, the *Zeneca* court applied the government contacts exception to personal jurisdiction "because it takes into account what [was] actually transpiring []: the exercise of the right to petition the federal government" via a Maryland-based agency. 173 F.3d at 835.

10

"something more" directed to this forum, the TruPharma Agreement demonstrates that Beloteca has established distribution channels to market and sell the Accused ISB Products throughout the United States—including Texas—since at least November 18, 2015. (Dkt. No. 37-6 at 1.) The Court finds no meaningful distinction between the "distribution channels" of the defendant in *Acorda* and those contracted for by Beloteca. *See* 817 F.3d at 762–63; *see also Allergan*, 2016 WL 1572193, at *3 (noting that defendants did not "represent[] that they will not sell nationally, including in Texas, if they receive FDA approval[,] [n]or . . . offer[] any reason to believe that . . . they would sell their product in some States, but not in Texas"). The record before the Court indicates, and this Court finds, that Beloteca has sufficient minimum contacts with this forum for the Court to exercise personal jurisdiction. Accordingly, Beloteca's request to dismiss this case for lack of personal jurisdiction is **DENIED**.

B. First to File Rule is Mooted

Although the first-filed rule would ordinarily counsel transfer of this case to the Northern District of Illinois,[11] the Illinois Court has already decided that the first-filed case should yield to the second. (Illinois Action, Dkt. No. 43 at 2, 11–12 (dismissing Beloteca's preemptive declaratory judgment action without prejudice for lack of subject matter jurisdiction (i.e., lack of case or controversy) at the time of filing).) *See also Virtual Fleet Mgmt., LLC v. Position Logic, LLC*, No. 2:17-CV-00014-JRG, 2017 WL 10276708, at *2 (E.D. Tex. May 17, 2017) ("[I]t is not

---

[11] "When confronted with substantially similar declaratory judgment and patent infringement actions filed in different jurisdictions, courts generally favor the forum of the first-filed action, whether or not it is a declaratory action." *RPost Holdings, Inc. v. Sophos, Inc.*, No. 2:13-cv-959-JRG, 2014 WL 10209205, at *1 (E.D. Tex. Aug. 20, 2014) (citing *Genentech, Inc. v. Eli Lilly and Co.*, 998 F.2d 931, 938 (Fed. Cir. 2008) (citations omitted)). The Court is persuaded that the Illinois Action and the instant case substantially overlap. Both cases involve (1) the same parties (although in reversed positions), (2) the same patents (i.e., the Asserted Patents), and (3) the same accused product (i.e., the Accused ISB Product). Additionally, the posture of the two cases are also mirrored: (1) the Illinois Action is a declaratory judgment action for noninfringement and invalidity, and (2) this case is a declaratory judgment for infringement. *See VE Holding Corp. v. Johnson Gas Appliance Co.*, 917 F.2d 1574, 1583–84 (Fed. Cir. 1990) (noting that "a declaratory judgment action alleging that a patent is invalid and not infringed" is "the mirror image of a suit for patent infringement").

the second-filed court's position to determine the appropriate venue.") As such, this Court need not consider whether any exception[12] to the first-filed rule—which is necessarily a case-specific, factual inquiry—applies in this case. *See Mobility Elecs., Inc. v. Am. Power Conversion Corp.*, No. 5:07-cv-00083, 2007 WL 9724768 at *3 (E.D. Tex. Oct. 10, 2007) (Craven, J.) (explaining that a party may avoid "application of the first-to-file rule" by "show[ing] the existence of compelling circumstances," such as "considerations of judicial and litigant economy, and the just and effective disposition of disputes"). Given the dismissal of the Illinois Action, Beloteca's request to transfer this case to the Northern District of Illinois under the first-filed rule is **DENIED-AS-MOOT**.

      C.      <u>Venue is Not Proper Before This Court</u>

Although Plaintiffs purport to bring a declaratory judgment action under 28 U.S.C. § 1391, Beloteca argues that this case is a really "civil action for patent infringement" under 28 U.S.C. § 1400, where the remedy sought for patent infringement is by declaratory judgment. (Dkt. No. 21 at 14.) Arguing further, Beloteca says that venue in this District is improper because: (1) it is undisputed that Beloteca is incorporated in California, (2) Beloteca has committed no alleged acts of infringement in this District, and (3) it is undisputed that Beloteca has no regular and established place of business in this District. (*Id.* at 1, 15.) Beloteca also argues that Plaintiffs ignore the fundamental fact that their Complaint seeks to assert rights arising from the Asserted Patents in the form of a particular remedy for threatened infringement. (*Id.* at 15.) As such, Beloteca contends that the proper interpretation of the language "for patent infringement" in § 1400(b) includes cases that seek to vindicate rights under the Patent Act. (Dkt. No. 52 at 7–8 (quoting *TC Heartland LLC v. Kraft Foods Grp. Brands LLC*, 137 S. Ct. 1514, 1519 (2017)).)

---

[12] Plaintiffs argued that judicial and litigant economy exempt this Court from applying the first-to-file rule. (Dkt. No. 37 at 9.)

Plaintiffs argue that since their Complaint is a declaratory judgment action for *future* patent infringement, 28 U.S.C. § 1391 is the governing venue statute. (Dkt. No. 37 at 21–22 (citing *Telectronics Pacing Systems v. Ventritex, Inc.*, 982 F. 2d 1520, 1526 n.6 (Fed. Cir. 1992) ("A count under the Declaratory Judgment Act should be distinguished from a count under 35 U.S.C. § 271 for patent infringement."); *Proler Steel Corp. v. Luria Bros. & Co.*, 223 F. Supp. 87, 91 (S.D. Tex. 1963) ("Neither 1400(b) nor 1391(c) should be totally emasculated by the other. The two sections can be read so that each serves its own unique function. In this manner only suits for patent infringement fall within the terms of 1400(b), and other suits relating to patents may have their venue determined by 1391(c).")).) Plaintiffs contend that they are not circumventing § 1400(b) because: (1) they could not assert a 35 U.S.C. § 271(a) infringement claim because Beloteca has yet to commit any infringing acts under § 271(a), (Dkt. No. 37 at 21 (citing *Lang v. Pac. Marine & Supply Co.*, 895 F.2d 761, 765 (Fed. Cir. 1990))); and (2) they could not assert a § 271(e)(2) infringement claim because Beloteca did not file a paragraph IV certification, (*id.* at 22–23 (citing *Eisai* 2007 WL 4556958, at *12)).

Though Courts regularly find that declaratory judgment actions for non-infringement and invalidity are governed by § 1391 because no statutory remedy exists under the Patent Act,[13] Plaintiffs have a cognizable claim under § 271(e)(2). *See* discussion *supra* Part II.B. Since Plaintiffs, unlike Beloteca, already have an express statutory remedy for patent infringement, they

---

[13] *See VE Holding Corp. v. Johnson Gas Appliance Co.*, 917 F.2d 1574, 1583–84 (Fed. Cir. 1990) ("It has long been held that a declaratory judgment action alleging that a patent is invalid and not infringed—the mirror image of a suit for patent infringement—is governed by the general venue statutes, not by § 1400(b)."); *see also Bristol-Myers Squibb Co. v. Mylan Pharm. Inc.*, No. CV 17-379-LPS, 2017 WL 3980155, at *6 (D. Del. Sept. 11, 2017) (explaining, post-*TC Heartland*, that "[v]enue in a declaratory judgment action for patent noninfringement and invalidity is governed by the general venue statute, 28 U.S.C. § 1391(b) and (c), and not the special patent infringement venue statute, 28 U.S.C. § 1400(b)." (quoting *U.S. Aluminum Corp. v. Kawneer Co.*, 694 F.2d 193, 195 (9th Cir. 1982); *Horne v. Adolph Coors Co.*, 684 F.2d 255, 260 (3d Cir. 1982); *Emerson Elec. Co. v. Black & Decker Mfg. Co.*, 606 F.2d 234, 238 (8th Cir. 1979); *Gen. Tire & Rubber Co. v. Watkins*, 326 F.2d 926, 929 (4th Cir. 1964), *cert. denied*, 377 U.S. 909 (1964); *Barber–Greene Co. v. Blaw–Knox Co.*, 239 F.2d 714, 116 (6th Cir. 1957))); *Jeffers Handbell Supply, Inc. v. Schulmerich Bells, LLC*, No. 0:16-CV-03918-JMC, 2017 WL 3582235, at *8 (D.S.C. Aug. 18, 2017) (same).

should not be given an additional one in the form of a declaratory action for patent infringement. Accordingly, the Court finds that venue is not proper here because § 1400(b), not § 1391, governs this case. Plaintiffs' § 1391(b) argument is predicated on this case being a "declaratory judgment *of* infringement" instead of a "civil action *for* patent infringement." (*See* Dkt. No. 1 ¶ 1 (emphasis added); *cf.* 25 U.S.C. § 1400(b) (emphasis added).) This is a distinction without much difference. *See* Fed. R. Civ. P. 2 ("There is one form of action—the civil action."). Plaintiffs seek to directly enforce their patent rights—nothing more. (*See* Dkt. No. 1 ¶ 1 (framing this case as "an action for declaratory judgment *of infringement* arising under the Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202 and *under the patent laws* of the United States" (emphasis added)).)

This Court cannot ignore the Supreme Court's express rejection of the Federal Circuit's attempt to "apply[] § 1391(c) to patent infringement cases [] to bring the law of venue in patent cases more in line with" declaratory judgment actions for noninfringement or invalidity. *See VE Holding Corp. v. Johnson Gas Appliance Co.*, 917 F.2d 1574, 1583–84 (Fed. Cir. 1990), *cert. denied*, 499 U.S. 922 (1991), *abrogated by*, *TC Heartland*, 137 S. Ct. at 1521. Particularly where, as here, a plaintiff has an actionable claim under § 271, the plaintiff cannot avoid the requirements of § 1400(b) by wrapping its patent infringement claim inside the blanket of a declaratory judgment action.

When viewed under the proper statute, venue in this District is not proper. Beloteca is incorporated in California, its only apparent place of business is in San Diego, California, and the record does not indicate that it has any regular and established places of business in this District. (Dkt. No. 21 at 15–16; *see also* Dkt. No. 37 at 2, 20.) Plaintiffs have not proffered any evidence or argument that venue here is proper under § 1400. Instead, Plaintiffs have pinned all their venue hopes to their "declaratory judgment action is not a patent case" arguments—which this Court

14

rejects. Accordingly, the Court is of the opinion that Beloteca's request that the above-styled case be transferred should be and hereby is **GRANTED**. Since (1) the Court in the Northern District of Illinois has already determined that it may properly exercise personal jurisdiction over Apicore and Mylan (Illinois Action, Dkt. No. 43 at 11), (2) that forum was Beloteca's original forum of choice, and (3) the parties have a cross-use agreement for any discovery produced in this action or the Illinois action, this Court exercises its discretion under 28 U.S.C. § 1406 to transfer this case to the Northern District of Illinois. This Court agrees with the Court in the Northern District of Illinois that "[c]ontinued tactical maneuvering is unwarranted . . . the parties will get a fair hearing." (*Id.* at 12.) To the extent such does not run afoul of the rules and practices of the Northern District of Illinois, this Court directs that upon receipt by its sister court that this case be assigned to Judge John J. Tharp, Jr., who is already well-versed in the facts at issue and the positions of these parties.

## III.  CONCLUSION

Beloteca's Motion to Dismiss for Lack of Personal Jurisdiction, Improper Venue, and Prior Pending Action (Dkt. No. 21) is hereby **GRANTED-IN-PART** and **DENIED-IN-PART** as set forth herein. While the Court may properly exercise personal jurisdiction over Beloteca, this Court is not the proper venue to resolve the parties' dispute. Accordingly, it is hereby **ORDERED** that the above-captioned case shall be **TRANSFERRED** in its entirety to the Northern District of Illinois. The Clerk of this Court shall take such steps as are needed to effectuate this transfer. Given the circumstances of this particular case, the Clerk of this Court shall immediately effect such transfer, without the usual 21 day delay which transpires before transfer is actually carried out.

**So ORDERED and SIGNED this 17th day of April, 2019.**

_____
RODNEY GILSTRAP
UNITED STATES DISTRICT JUDGE